**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-22264-RAR**

**CRUZ MIGUEL FRANCISCO**,

     Petitioner,

v.

**MIAMI FDC**, *et al*.,

     Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Cruz Miguel Francisco's Amended Petition for a Writ of Habeas Corpus ("Amended Petition"), [ECF No. 6], filed on April 2, 2026. Petitioner alleges that he has been unlawfully committed to detention at the Federal Detention Center in Miami, Florida ("FDC Miami") and seeks that the Court order Respondents to provide him a bond hearing. *See* Am. Pet. ¶ 16. The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Amended Petition, [ECF No. 6], is **DENIED** for the reasons set forth herein.

## BACKGROUND

Petitioner is a citizen and national of Guatemala. Am. Pet. ¶ 2. Petitioner entered the United States without inspection as an unaccompanied alien child ("UAC") on or about May 25, 2013, and was placed in removal proceedings thereafter. *Id*. at ¶¶ 2–3. Petitioner was released into the custody of his father on June 11, 2013. *See* ORR Release Form, [ECF No 1-2]. On June 19, 2014, Petitioner filed an Application for Asylum. *Id*. at 4.

On April 26, 2022, an Immigration Judge administratively closed Petitioner's removal proceedings pursuant to a Motion by the Department of Homeland Security ("DHS").  Am. Pet. ¶ 5.  DHS then filed a Motion to Recalendar Administratively Closed Proceedings on May 23, 2025. *Id*. at ¶ 6.

On January 27, 2026, Petitioner was arrested by the Palm Beach Sheriff's Office for the offenses of Simple Battery – Domestic; False Imprisonment; and Tampering with a Victim.[1] Resp., [ECF No. 9] at 1–2.  Petitioner was taken into custody by Immigrations and Customs Enforcement ("ICE") on January 30, 2026, and detained without bond at FDC Miami.  Am. Pet. ¶ 8; Resp. at 2.

On April 1, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, [ECF No. 1].  The same day, the Court entered a Paperless Order striking the Petition as improperly verified, [ECF No. 5].  Petitioner subsequently filed an Amended Petition, [ECF No. 6], on April 2, 2026. Petitioner asks the Court to (1) assume jurisdiction over this matter and order that Petitioner should not be transferred outside of the Southern District of Florida during the pendency of the Petition; (2) declare that Petitioner is not an "applicant for admission" pursuant to 8 U.S.C. § 1225(b); and (3) "[i]ssue a Writ of Habeas Corpus ordering Respondents to immediately [ ] provide a bond hearing under 8 U.S.C § 1226(a)[.]"  *See* Am. Pet., Prayer for Relief.

On April 8, 2026, the Court issued an Order to Show Cause and Omnibus Order ("Order to Show Cause"), [ECF No. 8], directing Respondents "to show cause why the Petition should not be granted and [to] file all documents and transcripts necessary for resolution of the Petition."  *See* Order to Show Cause at 2–3.  On April 10, 2026, Respondents filed a Response to Petitioner's

---

[1]  Petitioner indicates that the State of Florida has dropped the charges against him.  Am. Pet. ¶ 7.

Habeas Petition ("Response"), [ECF No. 9]. Petitioner did not file a Reply. Accordingly, the Petition is ripe for review.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that he is not subject to § 1225(b)(2), and therefore his continued detention violates the INA. Am. Pet. ¶¶ 47, 58. Petitioner further claims that because he entered the United States as a UAC in 2013, his detention is governed by the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"); therefore, the Department of Homeland Security must consider placing him in the "least restrictive setting available." *See id*. ¶ 41 (quoting 8 U.S.C § 1232(c)(2)(B)). Petitioner also maintains that his detention without bond violates his Fifth Amendment right to Due Process by depriving him of liberty. Am. Pet. ¶ 64. In addition to responding to Petitioner's claims, Respondents argue that the Court lacks jurisdiction to consider the Petition pursuant to 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See* Resp. at 11–16.

Accordingly, there are four questions before the Court: (1) whether the Court has jurisdiction to review the Petition; (2) whether Petitioner is properly detained pursuant to § 1225(b)(2); (3) whether the TVPRA applies to Petitioner; and (4) whether Petitioner's mandatory detention is consistent with the Due Process Clause.  The Court addresses each question in turn.

### I.   The Court has jurisdiction to consider the Petition.

Respondents argue that 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) bar Petitioner's claims.  *See* Resp. at 11–16.  Although jurisdiction stripping provisions such as § 1252(g) and § 1252(b)(9) may preclude judicial review, they are not applicable here.  Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).  The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999).  And § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).

Neither provision is applicable here because Petitioner is merely attacking Respondents' decision to treat him as an *applicant for admission* under § 1225(b).  *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal

proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined"); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Accordingly, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726, at *3 (S.D. Fla. Feb. 23, 2026).

### II. Petitioner is properly detained pursuant to § 1225(b)(2) and is therefore not entitled to a bond hearing.

Respondents maintain that Petitioner's detention is lawful pursuant to § 1225(b)(2). Specifically, Respondents contend that the plain language of § 1225(b)(2) mandates detention of applicants for admission; that applicants for admission under § 1225(b)(2) are seeking to be legally admitted into the United States; that § 1226 does not support Petitioner's argument; and that the Government's reading comports with Congressional intent and accords with the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See* Resp. at 4–10. Petitioner, however, maintains that § 1225(b)(2) "does not apply to [him because he] entered the country without inspection as an unaccompanied child, and has resided in this country for years." Am. Pet. ¶ 47. Petitioner also invokes the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") and asserts that "[a]n individual who entered the United States as an unaccompanied child years ago and was released from government custody to a guardian cannot later be detained under § 1225(b)(2)(a)." *Id*. at ¶ 49.

This Court's opinion in *Rocha Vargas v. Miami Federal Detention Center* is instructive here, as the Court addressed whether a similarly situated petitioner was detained pursuant to § 1225 or § 1226. No. 25-CV-25966-RAR, 2026 WL 911291, at *2 (S.D. Fla. Apr. 2, 2026). After

carefully analyzing competing interpretations of § 1225 and § 1226, this Court concluded that "Petitioner [was] properly detained pursuant to § 1225(b)(2) and [was] therefore not entitled to a bond hearing." *Id*. at *1–2. Accordingly, for the reasons explained herein, Petitioner is similarly detained pursuant to § 1225(b)(2).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an "alien[] treated as an applicant[] for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]" 8 U.S.C. § 1225(a)(1). And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id*. § 1225(b)(2)(A). While § 1225(b)(2)(A) does not, under any circumstances, permit the Government to release detained aliens on bond, under § 1226 "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . [and] the Attorney General . . . [] may release the alien on [] bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General[.]" *Id.* § 1226(a). Accordingly, the question is whether an alien who enters the United States without inspection and who has been physically present and living in the United States for a number of years is subject to mandatory detention under § 1225(b)(2)(A), without access to a bond hearing, or § 1226(a), which requires an individualized bond determination.

As this Court explained in *Rocha Vargas*, the Petition presents a question of statutory interpretation that has divided courts across the country. *See Rocha Vargas*, 2026 WL 911291, at *3 (collecting cases). The Fifth and Eighth Circuits have considered the very question presented by the Petition, and have concluded that aliens like Petitioner are detained pursuant to §

1225(b)(2)(A).[2] *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) (finding that 8 U.S.C. § 1226(a) does not apply to petitioners, given that "[t]he text and context of § 1225 contradict the petitioners' reading of the statute."); *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) ("[T]he district court erred in holding that the Government could not detain [petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis."). However, the Second Circuit recently came to the opposite conclusion, finding that "Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Barbosa da Cunha v. Freden*, No. 25-3141 (2d Cir. Apr. 28, 2026).

Petitioner notes that the Government's longstanding practice has been to detain similarly situated aliens pursuant to § 1226. *See* Am. Pet. ¶ 33. However, while "longstanding practice . . . can inform a court's determination of what the law is" it "does not justify a rule that denies statutory text its fairest reading." *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *13 (S.D.N.Y. Jan. 14, 2026) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) and *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015)). Accordingly, a fulsome analysis of the text and purpose of the competing statutory provisions is warranted. And, while "[b]oth sides present plausible readings of the statutory text[,]" *Alvarez v. Noem,* No. 3:26-CV-73, 2026 WL 545382, at *2 (W.D. Pa. Feb. 26, 2026), the Court concludes

---

[2] The Seventh Circuit discussed this question of statutory interpretation in the context of an order enjoining the Department of Homeland Security from making warrantless arrests of noncitizens, which is *not* the issue before this Court. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. 2025). But the Seventh Circuit noted that "Plaintiffs have the better argument on the current record" as to the question of "whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders[.]" *Id.* at 1061.

While the Eleventh Circuit has not yet weighed in on this question, it is currently under advisement; indeed, oral argument was held on March 26, 2026. *See* Oral Argument, *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, et al.*, No. 25-14065 (11th Cir. Mar. 26, 2026), ECF No. 68.

that the Government's position presents the more compelling interpretation.

As explained in *Rocha Vargas*, under § 1225(b)(2)(A), an alien can be detained without bond if he is "an applicant for admission" and "if the examining immigration officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  *See Rocha Vargas*, 2026 WL 911291, at *4.  Here, Petitioner is both an applicant for admission *and* seeking admission pursuant to § 1225.

*First*, Petitioner is properly considered an applicant for admission under § 1225(a)(1).  An alien is "deemed for purposes of this chapter an applicant for admission" where they are "present in the United States [and] ha[ve] not been admitted or [have] arrive[d] in the United States (whether or not at a designated port of arrival . . .)".  8 U.S.C. § 1225(a)(1).  "As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute."  *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also BellSouth Telecomm'ns, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001) ("When interpreting a statute, 'it is axiomatic that a court must begin with the plain language of the statute.'" (quoting *United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000)).  Here, the plain language suggests that Petitioner is an applicant for admission because he is currently present in the United States and has not yet been lawfully admitted.  Accordingly, because "[p]resence without admission deems [] petitioners to be applicants for admission[,]" Petitioner falls squarely within the definition of "applicant" for purposes of § 1225(a)(1).  *Buenrostro-Mendez*, 166 F.4th at 502.

*Second*, the Court finds that Petitioner is seeking admission pursuant to § 1225(b)(2)(A).  This presents a more complicated question of statutory interpretation, requiring an analysis of whether the terms *applicant for admission* and *seeking admission* are synonymous in nature.  A number of courts have read the term *seeking admission* to apply to only a subset of applicants for

admission—not to all *applicants for admission*. *See Kashranov v. Jamison*, No. 2:25-CV-05555-JDW*, 2025 WL 3188399, at \*6 (E.D. Pa. Nov. 14, 2025) ("While [petitioner] is an applicant for admission, he is not seeking admission.  He's already here.").  But the Fifth and Eighth Circuits have, to the contrary, found that "an applicant for admission to the United States is 'seeking admission' to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission." *Buenrostro-Mendez*, 166 F.4th at 502; *see also Avila*, 2026 WL 819258, at \*3 ("[T]he structure of § 1225(b)(2)(A) does not indicate that 'seeking admission' is a separate requirement for detention under the statute.").  This Court's independent review of the plain meaning of the statute compels the same result.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (citation omitted).  It is uncontroverted that the plain meaning of the terms *applicant for admission* and *seeking admission* is the same.  *See Avila*, 2026 WL 819258, at \*3.  Indeed, "[w]hen a person applies for something, they are necessarily seeking it." *Buenrostro-Mendez*, 166 F.4th at 502 (comparing the formal definitions of the terms "to apply" and "to seek"); *see also Candido v. Bondi,* No. 25-CV-867 (JLS), 2025 WL 3484932, at \*3 (W.D.N.Y. Dec. 4, 2025) (explaining that "'applicant' and 'seeker' are, indeed, accepted synonyms" and because "there is no 'material variation' in meaning between these two terms[] there is no reason to apply interpretive canons").

Some courts have interpreted *seeking* to require present, affirmative action.  *See, e.g., Kashranov*, 2025 WL 3188399, at \*6 ("The phrase 'seeking admission' functions as a present participial modifier of the term 'alien' within the statute. . . . The present participle, expressed in

the progressive '-ing' form, conveys ongoing and continuous action rather than a completed or static state."). However, to read *seeking admission* to apply only to those physically at the border ignores the complex realities of the United States immigration process. To gain legal admission into the United States is a lengthy, multifaceted procedure, requiring aliens like Petitioner to apply for admission, continuously supplement their application, and sit for multiple rounds of interviews. Therefore, it is an artificial construct to view those *seeking admission* as only the subset of applicants at an entry point to the United States.

*Lastly*, the Court acknowledges that there are meritorious arguments in opposition to this interpretation. Indeed, a common counter is that by interpreting *applicant for admission* as equivalent to *seeking admission*, the phrase *seeking admission* is rendered superfluous. But, as this Court explained in *Rocha Vargas*, this argument is unavailing. *See Rocha Vargas*, 2026 WL 911291, at *6 (finding that the broader statutory context does not render *seeking admission* superfluous because "[i]n the absence of any statutory text suggesting otherwise, it does not appear that Congress intended to ascribe independent meaning to the phrase *seeking admission*."). Nor is the Court persuaded by arguments grounded in congressional intent and the Government's longstanding practice. *Id*. at *7 (noting how the Government's interpretation better aligns with IIRIRA's aims and that the Court's interpretation adheres to the statutory text rather than any arguments sounding in past practice).

Further, the Supreme Court's dicta in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), is not dispositive here. Some courts have found that this case reflects the Supreme Court's understanding that § 1225 applies to "aliens seeking admission"—while § 1226 applies to "aliens in the country." *See, e.g.*, *Alvarez*, 2026 WL 545382, at *1. However, others have noted that *Jennings* "does not foreclose the possibility that these categories overlap." *See Rocha Vargas*, 2026 WL 911291, at

*6 (citing *Buenrostro-Mendez*, 166 F.4th at 505).  Accordingly, because *Jennings* seemingly cuts both ways, the Court declines to hang its hat on *Jennings* in reaching its conclusion.  In sum, Petitioner is properly detained pursuant to § 1225.

### III.  The TVPRA does not govern Petitioner's detention.

Petitioner's ineligibility for a bond determination is unchanged by the fact that Petitioner entered the United States as a UAC in 2013.  Petitioner argues that, because he was a UAC at the time of entry, his detention is governed by the TVPRA, "which requires unaccompanied children—even those who turn 18 and age out of [Office of Refugee Resettlement ("ORR")] custody—to be placed in the 'least restrictive setting available.'"  Am. Pet. ¶ 50 (quoting 8 U.S.C. § 1232(c)(2)(B)).  But Respondents counter that the TVPRA does not apply to Petitioner because "despite the fact that he was a UAC when he arrived in the United States in 2013, he was not a UAC when he was detained in January of 2026[.]"  Resp. at 10–11.

The TVPRA provides that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services," and UACs "shall be promptly placed in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(a)(1); 8 U.S.C. § 1232(c)(2)(A).  A UAC is defined as a child who (A) lacks lawful immigration status in the United States; (B) is under the age of 18; and (C) has no available parent or legal guardian in the United States, or no such parent or legal guardian is available to provide care and physical custody.  *See* 6 U.S.C. § 279(g).  When a UAC in custody "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available."  8 U.S.C. § 1232(c)(2)(B); *see also Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 812 F. Supp. 3d 86, 90–91 (D.D.C. 2025) (explaining that if UACs are "still in

custody on their eighteenth birthday, the now-adult immigrants 'age out' of HHS and ORR custody and are transferred to DHS custody" and § 1232(c)(2)(B) applies).

Here, Respondents are correct that the TVPRA does not apply to Petitioner. Although Petitioner was a UAC at the time of his entry in 2013, he was released into his father's custody shortly after entering the United States. *See* Resp. at 10 (citing ORR Release Form, [ECF No. 1-2]). Moreover, Petitioner was over the age of 18 when he was detained in 2026. As such, § 1232(c)(2)(B) does not apply to Petitioner because he did not reach the age of 18 while in custody as a UAC. *See Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 212 (S.D.N.Y. 2020) ("Mr. Mendez Ramirez was not a UAC when he was arrested by ICE and was not entitled to a least restrictive setting determination under Section 1232(c)(2)(B)."); *see also Cortez-Vasquez v. Holder*, 440 F. App'x 295, 298 (5th Cir. 2011) (holding the TVPRA to be inapplicable because "by the time Cortez-Vasquez submitted his application, he had attained eighteen years of age and had reunited with his family in the United States.").

Petitioner appears to argue that he never ceased to fall within the TVPRA's reach even after his release into the custody of his father, because "individuals who age out while on physical release but in legal custody of HHS are entitled to TVPRA protections." Am. Pet. ¶ 43 (citing *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *9–10 (S.D.N.Y. June 12, 2018)). While Petitioner is correct that a UAC can remain in ORR custody even after his physical release, UAC status is not "fixed and irrevocable." *Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540, 548 (D.N.J. 2019). Here, Petitioner asserts that he entered the United States as a UAC on May 25, 2013, Am. Pet. ¶ 2, but his ORR Release Form indicates that he was released into the custody of his father on June 11, 2013, [ECF No. 1-2]. To be considered a UAC, a child must either have no available parent or legal guardian in the United States, or no such parent or legal guardian is

available to provide care and physical custody.  *See* 6 U.S.C. § 279(g).  Thus, in Petitioner's case, "[t]hat unavailability . . . was temporary at most" and Petitioner ceased to be a UAC when he was released into the custody of his father less than a month after entering the United States.  *Jose L.P.*, 431 F. Supp. 3d at 548 (finding that petitioner no longer met the statutory definition of a UAC once he was released into the custody of his father nine days after entering the United States).

But even if Petitioner *did* remain a UAC in ORR custody following his release into his father's custody, [3] he was not one at the time of his detention in 2026—when he was over the age of 18.  Although "the removal of TVPRA protections on the day a UAC turns 18 appears to run directly counter to the statute," said protections only continue to apply "as long as the circumstances warranting the UAC's original release to a sponsor remain unchanged."  *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040, at *7 (E.D.N.Y. Feb. 6, 2026).  But the circumstances that warranted Petitioner's original release did not remain unchanged at the time of his detention, as he was released into his father's custody thirteen years prior and was detained following an arrest.  *See Jose L.P.*, 431 F. Supp. 3d at 549–50 (concluding that the petitioner "stood in the shoes of any other adult without resident status" because was detained four years after release into his father's custody, after reaching the age of 18, and following an arrest for suspected gang activity).

As such, the TVPRA does not apply to Petitioner, and he is properly detained pursuant to § 1225.  Accordingly, the Court rejects Count I of the Amended Petition.

---

[3]  While "UACs who live with sponsors under the *Flores* Settlement and the relevant provisions of the TVPRA, are in the 'custody' of the HHS, such that the protections of the amendment apply," *Lopez*, 2018 WL 2932726, at *10, there is no indication that Petitioner was released into the custody of his father under the *Flores* Settlement.

### IV.  Petitioner's detention does not violate due process.

Petitioner also argues that his detention violates due process, citing to the Supreme Court's opinion in *Zadvydas v. Davis*.  Am. Pet. ¶ 60.  In *Zadvydas*, the Supreme Court recognized two justifications for immigration confinement—preventing flight and preventing danger to the community.  533 U.S. 678, 690 (2001).  As such, Petitioner alleges a due process violation arising from his continued detention without a bond hearing.  *Id*. at ¶¶ 62–64.

While the Government did not respond to Petitioner's due process claim, the Court's independent review of the relevant law reveals that Petitioner has not identified a due process violation.  In *Zadvydas*, the procedural posture of the case was entirely different, given that it involved a "post-removal-period detention statute."  *See Zadvydas*, 533 U.S. at 683; *Guerra v. Director Florida Soft Side Detention Center*, No. 2:26-CV-756-KCD-NPM, 2026 WL 936435, at *4 (M.D. Fla. Apr. 7, 2026) (explaining that "*Zadvydas* provides [petitioner] no help here for a simple and fundamental reason: he is detained under a completely different statutory scheme.").  Here, Petitioner has not alleged that he is in post-removal proceedings.

In *Demore v. Kim*, the Supreme Court addressed the constitutionality of the "detention of deportable criminal aliens *pending their removal proceedings*"—the procedural posture at issue here.  538 U.S. 510, 527 (2003).  Finding "[d]etention during removal proceedings [to be] a constitutionally permissible part of that process," the Court considered and concluded that individuals like Petitioner could be detained without any finding as to whether they posed a flight risk or danger to society.  *Id*. at 524–25.  Here, Petitioner merely alleges that his detention without a bond redetermination hearing constitutes a due process violation—an argument that was clearly rejected in *Demore*.  Accordingly, Petitioner's detention comports with due process.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   Petitioner Cruz Miguel Francisco's Amended Petition for Writ of Habeas Corpus, [ECF No. 6], is **DENIED**.

2.   All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

3.   The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 28th day of April, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**